## KNOWLEDGE OF A DANGER WHICH COULD HAVE BEEN AVOIDED.

[Circuit Court of Summit County.]

THE CITY OF AKRON v. DAVID KEISTER.

Decided, April, 1905.

*Negligence—Unsafe Street Crossing—Of which Plaintiff Had Knowledge—And Could have Avoided.*

Where a jury return special findings to the effect that the street cross-ing where the plaintiff was injured, while not manifestly unsafe, was nevertheless not safe, and the plaintiff knew of its condition, and could have avoided it but not easily, and the testimony sup-ported these findings, a judgment in favor of the plaintiff will be reversed.

HENRY, J.; MARVIN J., and WINCH, J., concur.

Error to the Court of Common Pleas of Summit County.

This is a proceeding in error prosecuted by the City of Akron to reverse a judgment for one thousand dollars recovered by David Keister, of Mogadore, at the October Term, 1904, of the Court of Common Pleas of Summit County, for injuries by him received on or about August 29th, 1900, in consequence of being thrown from his wagon while attempting to turn from East Market street into Adams street in the city of Akron.

The action below was begun September 7th, 1901, and three trials have been had. The first trial resulted in a disagree-ment of the jury. On the second trial plaintiff recovered a verdict and judgment for $1,500, which was reversed by this court, and the cause remanded for retrial. The third trial re-sulted in a verdict for plaintiff of $1,000, with answers by the jury to special interrogatories. Motions by the defendant be-low for judgment on these findings and for a new trial were successively overruled. A bill of exceptions exhibiting all the evidence was perfected and a petition in error filed in this court.

The street intersection where the accident occurred was in a torn up condition; the pavement had been taken up on that

side of East Market street and a row of ties laid down side by side from the Adams street side to a point within the double tracks of the street railway which there  occupies the middle of East Market street.  These ties were intended and used for teams and vehicles to pass from either street to the other, across the unpaved portion of East Market street, until the repairs should be completed.  It is claimed, however, that this row of ties was too narrow a passageway and that the city was negli- · gent in maintaining the cross-over in an unsafe condition, where- by the wheels of vehicles driven there were liable to, and one of the hind wheels of plaintiff's wagon  did, in fact, drop down off the ends of the ties to the ground below.

Plaintiff was a man about seventy years old, who had been used to driving since he was a boy.  He and his grandson, ten years old, had twice driven over the ties on the day of the accident, and were about to drive over them again when the accident occurred.  On the first occasion they had a load of lumber, and, when about to turn from East Market into Adams street, they swung around toward the farther curb, in order to complete their turn before striking the row of ties.  Pro- ceeding thence up Adams street they unloaded their lumber, save two or three planks, which they left on the wagon as a bed, and returned the way they came.  Later they again ap- proached the ties with a heavy chest of tools across the plank. The plaintiff below sat on the chest and drove; his grandson was behind.  The horse was steady; but as plaintiff below drove upon the ties, the wagon gave a sudden lurch and he was thrown off and badly injured.  Neither the chest nor the boy fell off.  It is not perfectly clear from the evidence how the lurch was caused.  The wagon was geared unusually long and the bed was, of course, less firm than when the entire load of lumber was upon it.  The row of ties moreover was not quite level, there being a depression of the cross-over between the street railway and Adams street, and then a rise or up-grade into Adams street.  It is suggested that the wagon in this con- dition lurched forward off the rails of the street car tracks, or entered this depression, or both, in a more sudden manner than it had before when the wagon was loaded, and that this either

directly caused the accident or else caused a little shorter turn so that one of the hind wheels dropped to the ground.

In the view we take of the matter it is immaterial in what precise way the accident occurred, for certain of the jury's findings are clear and decisive and sufficiently supported by the evidence. The first three questions, and answers thereto, by the jury, are as follows:

"1. Was the crossing formed by placing ties on Market street at Adams street, manifestly unsafe for driving over with vehicles?

"Answer. No, but not safe.

"2. Was the condition of said crossing known to the plaintiff at the time when he attempted to cross and sustained the injuries of which he complains?

"Answer. Yes.

"3. Could the plaintiff easily have avoided this crossing?

"Answer. Could have avoided, but not easily."

The remaining findings are that plaintiff below was not negligent and that he did not assume the risk. The last is a pure conclusion of law and should not have been submitted to the jury. It can not in any degree neutralize the force of the second finding, which is to the effect that plaintiff knew the condition of the crossing when he attempted to pass over. It is immaterial whether its dangers were or were not manifest generally, if its condition was known to him. He had other means, though less easy of reaching his destination, but he chose rather to drive over this crossing, knowing its condition This is clearly the voluntary assumption of a known risk, such as would defeat a recovery under the circumstances of this case. In *The Village of Conneaut* v. *Naef*, 54 O. S., 529, it was held that one who goes voluntarily upon an accumulation of ice on a walk of a village can not maintain an action against such village for a personal injury resulting to him, if the source of danger is plainly visible. To the same effect are *Schaefler* v. *The City of Sandusky*, 33 O. S., 246; *Cleveland* v. *Stofer*, 33 Bull., 227. It is clearly implied, in *Farmer* v. *Findlay Street Railway*, 60 O. S., 36, that the same rule applies to the driving of teams and vehicles into dangerous places in the public streets of a municipality.

An examination of the testimony shows that the jury could not properly have found otherwise than as they did as to the defendant in error's knowledge of the condition of the crossing.

We hold, therefore, that this judgment is against the weight of the evidence and is contrary to law, and that the court erred in refusing to render judgment on the special findings for the defendant below. The judgment for the plaintiff below is accordingly reversed.

We can conceive of no useful purpose to be served by remanding this cause for a fourth trial, and, therefore, proceeding to render the judgment which the court of common pleas should have rendered, we enter judgment for the plaintiff in error.

*Clyde F. Berry* and *Scott D. Kenfield,* for plaintiff in error.
*I. H. Phelps* and *N. D. Tibbals,* for defendant in error